# EXHIBIT A

1   Christopher L. Ramey (242312)
    **RAMEY LITIGATION GROUP APC**
2   3838 Camino del Rio North
    Suite 120
3   San Diego, CA 92108-1762
    (619) 542-1530 Telephone
4   (619) 542-1541 Facsimile
    cramey@rameylitigation.com
5   www.rameylitigation.com

6   Attorneys for Plaintiff George Walther-Meade

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **IN AND FOR THE COUNTY OF SAN DIEGO**

10             **NORTH COUNTY REGIONAL CENTER**

11

12  GEORGE WALTHER-MEADE, an individual;  )   **Case No.**
                                          )
13                                        )   **COMPLAINT FOR:**
              Plaintiff,                  )
14                                        )   1. **BREACH OF IMPLIED CONTRACT;**
         vs.                              )   2. **BREACH OF COVENANT OF GOOD**
15                                        )      **FAITH AND FAIR DEALING;**
    LEIDOS, INC., a Delaware corporation; and )  3. **WRONGFUL TERMINATION IN**
16  DOES 1–10, inclusive;                 )      **VIOLATION OF PUBLIC POLICY**
                                          )      **(SICK LEAVE);**
17            Defendants.                 )   4. **FAILURE TO PAY ALL WAGES**
                                          )      **OWED UPON TERMINATION;**
18                                        )   5. **FAILURE TO PROVIDE ACCURATE**
                                          )      **WAGE STATEMENTS;**
19                                        )   6. **WRONGFUL TERMINATION IN**
                                          )      **VIOLATION OF PUBLIC POLICY**
20                                        )      **(DISCRIMINATION);**
                                          )   7. **DISPARATE TREATMENT IN**
21                                        )      **VIOLATION OF FEHA;**
                                          )   8. **FAILURE TO REIMBURSE**
22                                        )      **BUSINESS EXPENSES (LABOR**
                                          )      **CODE § 2802);**
23                                        )   9. **DEFAMATION;**
                                          )   10. **VIOLATION OF BUSINESS AND**
24                                        )      **PROFESSIONS CODE § § 17200 ET**
                                          )      **SEQ.**
25                                        )
                                          )
26                                        )
                                          )
27                                        )   Unlimited Civil > $25,000
                                          )   DEMAND – JURY TRIAL
28

*Walther-Meade v. Leidos, Inc.*                                    Page 1
                                                                   Complaint

EXHIBIT A - PAGE 4

**COMES NOW PLAINTIFF GEORGE WALTHER-MEADE** who hereby alleges as follows:

## INTRODUCTION

1. All allegations of this complaint are made upon information and belief, without prejudice to amendment, supplementation, contradiction, withdrawal, or deletion of any allegations or Plaintiff's rights to prove the facts at trial after it has been ascertained.

2. Plaintiff avails himself of the doctrine of alternative pleadings and, inasmuch as his investigation is not complete, and discovery and investigation are ongoing, pleads each allegation, cause of action, claim, and remedy in this Complaint without prejudice to any contradictory, current, subsequent or previous allegation, claim or remedy after the true and correct facts have been discovered and pleaded and proven and/or Plaintiff has expressly elected among available alternative remedies. Further, Plaintiff's pleading or omission of any alternative theory, cause of action, or remedy shall not constitute an election of one or more theories, claims, or remedies over, in place of, or to the exclusion of, any other.

3. Plaintiff alleges alternatively that each defendant was the agent, servant, and employee of each and every other defendant and, in doing the acts herein alleged, was acting within the scope and pursuant to such agency and employment at all relevant times.

4. Plaintiff alleges alternatively that each defendant approved in advance the actions taken by each other defendant or, after the conduct was undertaken, intentionally and with full knowledge thereof ratified, approved, or condoned and benefited from the actions of every other defendant, thereby adopting it as their own.

## PARTIES, VENUE, & JURISDICTION

5. Plaintiff is without knowledge of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of these fictitiously named

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

defendants is responsible in some manner for the occurrence herein alleged and that Plaintiff's damages as herein alleged were proximately caused by such defendants.

6.  Plaintiff GEORGE WALTHER-MEADE ("Plaintiff" or "Walther-Meade") is and at all times relevant herein was an individual residing and employed in the judicial district of San Diego County, State of California.

7.  Plaintiff is informed and believes and, on that basis, alleges that Defendant LEIDOS, INC. ("Defendant" or "Leidos") is a Delaware corporation doing business in this judicial district.

8.  Hereinafter, Defendant LEIDOS, INC. and DOES 1-10 shall be referenced collectively as "Defendant," and any reference to or mention of "Defendant" is intended to mean Defendant LEIDOS, INC. and DOES 1-10, collectively.

9.  Jurisdiction and venue are proper as the Defendants' principal place of business is in this judicial district, and conduct giving rise to this complaint, including the employment and performance of the agreements alleged herein, occurred in this judicial district.

10.  Defendant has exhausted all administrative requirements prior to the filing of this Complaint, including the filing of a complaint with the Department of Fair Employment and Housing and obtaining a right to sue letter for alleged violations of the Fair Employment and Housing Act.

## PRELIMINARY FACTS
### APPLICABLE TO ALL CAUSES OF ACTION

11.  Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

12.  Defendant Leidos is a publicly traded, international organization with a workforce in various markets, including military and civilian security applications.  Defendant employs more than approximately 44,000 persons.  Defendant employs more than fifty (50) persons within a seventy-five (75) mile radius of Defendant's workplace in this judicial district.

13.  Beginning in or about January 2003, Plaintiff was an exempt employee of Defendant and was delegated numerous positions of management, including high-level global sales, marketing, and oversight of service organizations.  Defendant was terminated November 16, 2021.  At the time

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

of his termination, Plaintiff was a manager responsible for oversight of personnel and generation of income for Defendant.

14. During the course of his employment, at least during the four years preceding Plaintiff's termination, Plaintiff worked more than 40 hours per week.  Plaintiff worked more than 1,250 hours in the year preceding his termination.

15. Regularly during the course of Plaintiff's employment, Defendant conducted performance reviews assessing Plaintiff's overall and specific performance in relation to detailed criteria, including Defendant's operational and sales goals.  Plaintiff's performance reviews reflected the highest standards of merit assessments.  During his employment until termination, Plaintiff's salary increased nearly 1,900%.

16. During the four years preceding the date of Defendant's termination, Plaintiff's wages were comprised of a base salary, commissions, bonuses, stock options, payments pursuant to a Long-Term Incentive Plan, and other several benefits of employment such as paid time off for vacation, sick leave, and personal time.

17. The Long-Term Incentive Plan afforded benefits for the period of four years beginning January 1, 2019.  When Plaintiff was terminated, Defendant refused to pay Plaintiff the balance of the Long-Term Incentive Plan or any value thereof wrongfully denying Plaintiff benefits of his employment.

18. In or about May 2020, Plaintiff was promised stock of Defendant corporation, ownership vested over time, in exchange for Defendant's continued employment for three years.  In exchange for the specified value of stock, Plaintiff and Defendant agreed Plaintiff would continue employment for a period of three years at which time the stock would fully vest.  Each year, Plaintiff's ownership in the stock vested in a proportional share.  At the time of Plaintiff's termination, Plaintiff possessed an ownership interest in a portion of the stock promised Plaintiff by Defendant.  Plaintiff relied on the stock incentive as a promise of continued employment in exchange for Plaintiff's continued work.

19. Regularly over the four years preceding termination of Plaintiff's performance, Defendant's supervisors and executives represented to Plaintiff that Defendant was actively engaged in

RAMEY LITIGATION GROUP
A Professional Law Corporation
3838 Camino del Rio North, Suite 120
San Diego, CA 92108

efforts to continue to increase Plaintiff's overall compensation and promote him to higher positions within the company to ensure Plaintiff's continued employment with Defendant.

20. In or about early 2021, Plaintiff's employment responsibilities included the management of international, service-related contracts.   Plaintiff negotiated an international contract of significant value for the United Mexican States ("Mexico"), a Latin-American country ("International Contract").   Defendant is and was aware Plaintiff is of Hispanic and of Mexican and Latin-American descent, and that Plaintiff's descent was a contributing factor to Plaintiff's development of sales contracts with Latin American countries, including the subject International Contract.

21. When formalized, the International Contract would result in a substantial bonus earned by Plaintiff; the International Contract would also earn commissions for Defendant's sales representatives, the payment of which were reviewed and approved in advance by Defendant's CEO and respective responsible officers.

22. In May 2021, Defendant's CEO and Civil Group President traveled to an international destination along with the Plaintiff and Defendant's sales representatives to pursue additional contracts of even greater values ("International Opportunities") with the same customer. Defendant's sales representatives scheduled and participated in meetings to advance these International Opportunities.

23. The sales representatives are Hispanic and of Mexican and Latin-American descent. Plaintiff's superiors and corporate representatives expressed disfavor of the salesperson's commissions and expressed intent to reduce commissions on the International Opportunities, questioning what value the Latin-American salespersons brought to Defendant; in response, Plaintiff stated said employees of Defendant should not receive reduced commissions.

24. At or about the same time in early 2021, a corporate analyst published an article critical of Defendant's international sales contracts, including allegations Defendant mischaracterized international sales and artificially inflated the value of international contracts.   At or about the same time, Hagens Berman, a plaintiff's class-action law firm, announced an investigation into Defendant's purported securities fraud and inflated revenues from international contracts.

25. After the public reports and Plaintiff's recommendation that Defendant refuse to reduce sales commissions of sales representatives of Latin American descent, Plaintiff recognized a shift in Defendant's discussion of and approach to the subject of International Opportunities.

26. Specifically, Defendant – in particular, its agents – began an incessant tirade of inquiry regarding "what the Latin-American representatives were doing" for Leidos, began questioning Plaintiff and other employees regarding Plaintiff's and the sales representatives' conduct in the Latin-American country, and implied through questions and statements that Plaintiff and other employees were engaged in impropriety in their dealings in Latin-America.

27. At the same time, Defendant began pressuring Plaintiff to close the International Opportunities deal and deliver Defendant's equipment to the Mexican government so that Defendant's books would reflect an increased end-of-year revenue recognition.

28. During the development of the International Opportunities, Plaintiff engaged in weekly meetings with Defendant's CEO and respective responsible officers to advise and apprise of the International Contract negotiations and development, matters of concern in the contract, discussions regarding and with the sales personnel, and discussions regarding the team and staff responsible for development and implementation of the International Opportunities.  Plaintiff sought and received from Defendant approval for each step of the International Contract and International Opportunities implementation and development, and Defendant had knowledge of and approved each person's involvement in the International Contract negotiations and development.

29. Notwithstanding upper management's knowledge and approval of Plaintiff's conduct related to the International Contract and International Opportunities, in or about early October 2021, Plaintiff met with designated representatives of Defendant in meetings wherein Defendant's agents began questioning Plaintiff as to the appropriateness of the International Contract in Mexico and International Opportunities; the agents also asserted Plaintiff's purported conduct with third persons further the contract in Mexico was dishonest.

30. Over the following weeks, Plaintiff met with Defendant's agents who accused Plaintiff of involvement with corrupt agents in the Latin-American country, accused Plaintiff of corruption

in the development and implementation of the International Contract and efforts to formalize a contract for the International Opportunities, and accused Plaintiff and those responsible for the negotiation and development of the Mexican International Contract and International Opportunity of impropriety in business practices in Latin American.   Despite Defendant's knowledge and approval of Plaintiff's conduct and employment of persons in Mexico for purposes of furthering the International Contract and securing the International Opportunities, Defendant claimed ignorance and asserted unsupported and contradictory arguments Plaintiff was involved in nefarious activities by nepotism.

31. Specifically, and incredulously, Defendant claimed Plaintiff had a familial relationship with certain Mexican contractors involved in the International Contract and pursuit of the International Opportunities, that such relationship – despite Defendant's knowledge and approvals of employment of such persons – was evidence that Plaintiff and Mexican officials and employees were involved in misconduct.

32. Defendant asserted to Plaintiff that because Plaintiff was of Latin-American descent and doing business in Mexico, Plaintiff was involved in immoral and reprehensible conduct in the development and implementation of the International Contract and pursuit of the International Opportunities.   Without supporting evidence, Defendant accused Plaintiff of providing benefits to government leaders or agents of Mexico for purposes of procuring the International Contract and securing the International Opportunities.

33. On or about November 1, 2021, Defendant demanded a meeting with Plaintiff.   However, Plaintiff was taking time off from work for sick leave and to care for himself and his ill wife, a fact known to Defendant at the time Defendant's demand to meet was made.

34. While still on leave to care for his wife, on November 9, 2021, Defendant demanded Plaintiff appear for a meeting with Defendant's agents for purposes of submitting to an in-person interrogation regarding the Mexican International Contract and International Opportunities. Plaintiff advised Defendant that he was ill, was suffering adverse effects from COVID-19 vaccination, and still caring for his wife; Plaintiff stated he would not be able to attend.

35. In response, Defendant's agents asserted Plaintiff's refusal to return to work and submit to the

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

*Walther-Meade v. Leidos, Inc.*

in-person interrogation was a violation of Plaintiff's duties to Defendant.  When Plaintiff refused to come to work, Defendant instructed Plaintiff not to contact any of Defendant's customers, unreasonably sequestering Plaintiff and punishing him.

36.  On Sunday, November 14, 2021, Defendant's agent contacted Plaintiff by text stating, "I hope your wife's procedure went well," acknowledging Plaintiff's authorized absence, and then stated if Plaintiff did not return to work by Monday, November 15, 2021, "it would be his last opportunity."   Plaintiff advised Defendant he would not be able to meet because of medical reasons and continued care for his wife.

37. Defendant terminated Plaintiff by written notice dated November 16, 2021, on purported grounds Plaintiff engaged in activities violating Defendant's code of conduct.  Notwithstanding, Defendant failed and refused, and continues to refuse, to provide Plaintiff a copy of such policies, an explanation as to the application of any policies to Plaintiff's conduct, or how Plaintiff purportedly violated the policies.   Defendant merely asserts a conclusory and unsupported statement that Plaintiff violated Defendant's ethical standards.

38. Defendant fabricated facts related to Plaintiff's alleged impropriety for purposes of terminating Plaintiff, to deny Plaintiff earned commissions, to divest Plaintiff of vested ownership interests in stock options, to deny Plaintiff earned and vested Long-Term Incentive Plan payments, and to deny Plaintiff earned paid time off.

39. Prior to the time of termination, Defendant failed to account for Plaintiff's earned time off.  Upon information and belief, at the time of termination, Plaintiff was not paid earned time off, was not paid commissions earned or to be earned as a direct result of his services to Defendant, was not paid ownership interests or fair market value of vested stock options, and was not paid earned Long-Term Incentive Plan payments, all in an amount according to proof at time of trial.  Defendant refused to pay Plaintiff his unpaid wages and other benefits to retaliate against Plaintiff for refusing to return to work while out on sick leave and to further Defendant's scheme of getting rid of "corrupt" Latin-American or Hispanic employees.

40. At the time of Plaintiff's termination, Plaintiff was owed reimbursement for expenses in an amount according to proof at time of trial.  From the time of Plaintiff's termination and until

today, Defendant failed and refused to reimburse Plaintiff for expenses paid and incurred by Plaintiff in the performance of his duties as an employee of Defendant.  Defendant refused to reimburse Plaintiff to retaliate against Plaintiff for refusing to return to work while out on sick leave and because Plaintiff is of Latin-American descent.

41. At or near the time of Plaintiff's termination, Plaintiff learned Defendant's other employees of Latin-American descent were terminated for cause on the same fraudulent and fabricated premise:  purported grounds the employees engaged in unethical conduct in violation of Defendant's alleged conduct policies.  Upon information and belief, the terminations were also unsupported, conclusory, and made to cleanse the company of employees Defendant deemed to be "corrupt" by their Latin-American descent.

42. During the time of his employment, and at least for four years preceding the date of his termination, all of Plaintiff's supervisors – including Defendant's upper management and officers – are Caucasian.  The termination of Plaintiff and other Hispanic employees was for the very reason Defendant blatantly stated to Plaintiff:  Plaintiff is of Latin-American descent, Plaintiff was working with Latin-American government officials and agents, Latin-American government officials and agents are corrupt, and. therefore, Plaintiff and others of Mexican and Latin-American descent are corrupt.

43. Defendant's customs and practices were, at all times, to provide a severance payment to an employee terminated without cause.  Had Defendant not wrongfully terminated Plaintiff's employment or breached Plaintiff's employment agreement, Plaintiff would be entitled to a severance payment in the amount of no less than $350,000.00, or in an amount according to proof at time of trial.

## FIRST CAUSE OF ACTION

### [Breach of Implied Employment Contract against All Defendants]

44. Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

45. In or about January 2003, Plaintiff was employed by Defendant.  During the course of Plaintiff's

employment, Defendant offered Plaintiff multiple incentives to continue his employment, including a 2019 Long-Term Incentive Plan, bonuses, stock ownership of the Defendant corporation, and opportunities in developing the International Contract that was to provide substantial economic benefits to Defendant.

46. Defendant conducted annual reviews of Plaintiff's work performance.  For nineteen (19) years, Plaintiff was employed by Defendant and Plaintiff received exceptional reviews.

47. Until the ethnic cleansing alleged herein, Defendant's practice and policy of terminating employees was, at all relevant times, only for good cause.  As an employee responsible for the implementation of Defendant's policies and procedures related to termination, Plaintiff reasonably understood that his employment would only be terminated for good cause.

48. Through Defendant's conduct of providing to Plaintiff salary increases, positive performance reviews, promotions, bonuses, stock ownership, incentive plans, and delegation to Plaintiff of management responsibilities substantially affecting Defendant's economic interests, Plaintiff and Defendant entered an implied-in-fact agreement for which Plaintiff would receive continued employment, wages, bonuses, incentives, stock ownership, and other benefits of employment, and in exchange for his continued devotion, commitment, and activities bringing economic benefit to Defendant (the "Agreement").

49. Except as to those obligations he was excused from performing, Plaintiff did all the Agreement required of him, including continued devotion, commitment, and activities bringing economic benefit to Defendant.

50. Defendant breached the Agreement when it conducted a sham investigation, fabricated reasons for termination, wrongfully terminated Plaintiff, and falsely accused Plaintiff of impropriety based on his Latin American descent.

51. As a direct and proximate result of Plaintiff's breach of the Agreement, to the time of termination Plaintiff suffered damages by the loss of Long-Term Incentive Benefits, wages, bonuses, stocks, incentives, and benefits of employment in the amount of no less than $1,315,000.00, or in an amount according to proof at time of trial.

52. But for Defendant's breach of the employment contract, Plaintiff would have enjoyed continued

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

employment, earned wages, pay increases, and bonuses, and for a period of no less than twenty-two (22) years from the date of termination.

53. Plaintiff is entitled to damages, at present cash value, of future earnings, including benefits, pay increases, bonuses, and other benefits of employment in an amount of no less than $213,750,000.00, or in an amount according to proof at time of trial, less setoffs by Plaintiff's mitigation of his damages in an amount according to proof at time of trial.

## SECOND CAUSE OF ACTION

**[Breach of Implied Covenant of Good Faith and Fair Dealing against All Defendants]**

54. Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

55. Every contract or agreement carries an implied promise of good faith and fair dealing prohibiting a party to the agreement from undertaking any action to interfere with the right of another party to receive the benefits of the contract.

56. Plaintiff and Defendant entered an implied, oral contract (the "Agreement") alleged hereinabove.

57. Except as to those obligations Plaintiff was excused from performing or which Defendant prohibited, Plaintiff did all the contract required him to do.

58. All conditions required for Defendant's performance occurred.

59. Defendant hired third parties to act as its agent to conduct a sham investigation of Plaintiff's work performance and activities, fabricated the reasons for the investigation and the purported findings, and used the illusory findings as grounds to wrongfully terminate Plaintiff and to deny Plaintiff the benefits of the Long-Term Incentive Plan, stock options, bonuses earned or to be earned, and other benefits enjoyed as a result of Plaintiff's employment.

60. Defendant intentionally terminated Plaintiff's employment with knowledge that such termination would result in denial of severance pay, benefits owed Plaintiff, including economic interests from the Long-Term Incentive Plan, stock options, bonuses earned or to be earned, and other benefits enjoyed as a result of Plaintiff's employment.

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

61. Defendant's unilateral right to modify the terms of the agreement between Plaintiff and Defendant, and unilateral right to cause termination of Plaintiff, constrains Defendant from undertaking acts that operate retroactively to impair Plaintiff's accrued rights. Defendant's termination of Plaintiff by a sham investigation, as well as unsupported and fabricated findings, resulted in divesting Plaintiff of severance pay, accrued bonuses, stock ownership, and accrued interests in the Long-Term Incentive Plan.

62. Defendant's sham investigation and fabricated facts and findings were known or should be known by Defendant to harm Plaintiff's reputation, to hinder and harm Plaintiff's ability to obtain comparable employment and equivalent wages and benefits.

63. The conduct and actions of Defendant are reprehensible, greedy, and a breach of Defendant's covenant and duty to act fairly and in good faith in its performance of the agreement for employment between Plaintiff and Defendant. The conduct of Defendant was malicious, oppressive, and fraudulent, and done intentionally with knowledge that termination of Plaintiff would deprive Plaintiff of economic benefits Defendants then owed to Plaintiff.

64. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount no less than $834,765.00, or in an amount according to proof at time of trial.

### THIRD CAUSE OF ACTION

**[Wrongful Termination in Violation of Public Policy (Sick Leave)**

**against All Defendants]**

65. Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

66. On or about November 10, 2021, Plaintiff requested Defendant accommodate Plaintiff's need for time off to attend to his own medical issues, as well as upcoming medical issues concerning his wife. Plaintiff made clear to Defendant that he was unable to attend to his responsibilities at work during that time. In response to Plaintiff's request, Defendant is obligated by California law to provide leave and accommodate Plaintiff's request.

67. On November 10, 2021, Defendant demanded Plaintiff come to work. Plaintiff advised

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

Defendant that he was ill and unable to attend work.  On November 12, 2021, Plaintiff received a COVID-19 vaccine booster which caused him to be unwell and unable to attend to his work duties.  Defendant was advised of Plaintiff's condition, but Defendant continued to demand Plaintiff appear and attend to work.

68. On November 12, 2021, Plaintiff was told he was required to report to work on Saturday, November 13, 2021, and that if Plaintiff failed to comply, Defendant would "take appropriate action."

69. In response to Defendant's demand, Plaintiff reminded Defendant that he could not come in on Saturday, November 13, 2021, because he was attending to his wife who needed his care while she underwent medical treatment and procedures.

70. On Sunday, November 14, 2021, Defendant texted Plaintiff and inquired about the condition of Plaintiff's wife, and then stated that Plaintiff must attend work on Monday, November 15, 2021. Again, Plaintiff was unable to attend work because he continued to suffer his illness and continued to care for his wife.

71. On Tuesday, November 16, 2021, Plaintiff was terminated because he refused to report to work to participate in the sham investigation alleged herein.

72. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered harm in the form of lost wages, lost bonuses, lost incentive pay, and other benefits of employment in an amount of no less than $1,315,000.00, or in an amount according to proof at time of trial.

73. Defendant's conduct was malicious and oppressive.  Defendant knew of its superior power over Plaintiff, attempted to coerce Plaintiff to waive his right to medical leave, threatened Plaintiff with loss of his job if he did not waive his right to take medical leave, and ultimately terminated Plaintiff when Plaintiff refused to waive his right to take medical leave.  For these reasons and based on Defendant's conduct as alleged herein, Plaintiff is entitled to exemplary damages in an amount according to proof at time of trial.

74. Defendant's termination of Plaintiff is in violation of the California Fair Employment and Housing Act.  Pursuant to California Government Code section 12965(c)(6), Plaintiff is entitled to and seeks recovery of reasonable attorney fees and costs, including expert witness fees.

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

## FOURTH CAUSE OF ACTION

### [Failure to Pay All Wages Owed Upon Termination against All Defendants]

75. Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

76. Within a period of four years prior to the filing of this Complaint, Plaintiff performed work for Defendant.

77. At the time of Plaintiff's termination, Plaintiff was owed wages, including but not limited to earned time off, discretionary and customary bonuses, and non-discretionary bonuses.

78. At the time of termination, Defendant did not pay – and continues to refuse to pay – wages owed, earned time off, discretionary and customary bonuses, and non-discretionary bonuses, in an amount of no less than $1,100,000.00, or in an amount according to proof at time of trial.

79. Plaintiff is entitled to all wages owed at the time of termination.  As a direct result of bringing this action to recover wages owed, Plaintiff has incurred and will continue to incur attorney fees and costs.  Pursuant to California Labor Code section 218.5, Plaintiff is entitled to recovery of attorney fees and costs.

80. Pursuant to Labor Code section 203, Plaintiff is entitled to a waiting time penalty of his daily average wage for each day the wages are not paid, up to a maximum of thirty (30) days.  More than thirty (30) days have elapsed since Plaintiff was terminated and the wages were due.  Accordingly, Plaintiff is entitled to a waiting time penalty in the amount of no less than $126,925.00, or in an amount according to proof at time of trial.

## FIFTH CAUSE OF ACTION

### [Failure to Provide Accurate Wage Statements against All Defendants]

81. Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

82. Defendant failed to provide Plaintiff with an accurate record of all earned time off, wages, and bonuses earned.

83. Pursuant to Labor Code 226, Plaintiff is entitled to a penalty of $50.00 for the first inaccurate

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

wage statement and a penalty of $100.00 for each subsequent inaccurate wage statement, up to a maximum of $4,000.00.

84. Upon information and belief, Defendant provided Plaintiff more than forty-one inaccurate wage statements, and therefore Plaintiff is entitled to a penalty of no less than $4,000.00, or in an amount according to proof at time of trial.

85. Plaintiff has incurred and will continue to incur attorney fees and costs.  Pursuant to California Labor Code section 226(e), Plaintiff is entitled to recovery of attorney fees and costs incurred in bringing this action.


## SIXTH CAUSE OF ACTION

**[Wrongful Termination in Violation of Public Policy (Discrimination) against All Defendants]**

86. Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

87. During his employment and with Defendant's knowledge and approval, Plaintiff developed International Contracts and International Opportunities in Latin America, including with the United Mexican States ("Mexico").

88. Plaintiff engaged in weekly meetings with Defendant's CEO and respective responsible officers to advise and apprise of the Mexico negotiations and development.  Plaintiff sought and received from Defendant approval for each step of the Mexico contract negotiation and implementation, and Defendant had knowledge of and approved each person's involvement in the International Contract negotiations and development, including contractors.  Defendant knew and approved of each person Defendant hired in Mexico to negotiate and implement the contract in Mexico.

89. Defendant encouraged and furthered Plaintiff's participation in the contract with Mexico because Plaintiff is of Mexican descent and is fluent in Spanish.

90. Notwithstanding, in or about October 2021, Defendant appointed a third-party agent to investigate Plaintiff's contract negotiations in Mexico.  Without cause, Defendant's agents began questioning Plaintiff as to the "appropriateness" of the contract in Mexico and

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

International Opportunities in Mexico, as well as Plaintiff's purported conduct with government officials and contractors in Mexico.

91. In an aggrandized and aggressive investigation by Defendant's appointed agent, Plaintiff was subjected to a hostile and intimidating interrogation.   Plaintiff was informed of rampant corruption in Mexico and that Mexican government officials were corrupt, including those with whom Plaintiff and other of Defendant's employees or contractors were working.

92. Defendant then informed Plaintiff it was aware of Plaintiff's Mexican descent.  Plaintiff was told that the International Contract and International Opportunities in Mexico were inherently corrupt because the contract and negotiations were performed in Mexico, and Plaintiff, as a Mexican descendant, was involved.  Defendant's agent stated that because there was rampant corruption in Mexico's government, and because Plaintiff was of Mexican descent, then there is no other conclusion than there is corruption in Plaintiff's dealings in the International Contracts and International Opportunities in Mexico.

93. Notwithstanding the involvement of the CEO and upper management in the approval and knowledge of each person involved in the International Contract and International Opportunities in Mexico, Defendant's agent falsely stated that persons hired in Mexico to effect or participate in the International Contract were hired to further Plaintiff's corruption in Mexico, that the persons were not authorized to participate in the contract, and Defendant used the assertions as grounds to claim Plaintiff purportedly violated Defendant's "Standards of Business Ethics and Conduct."

94. Plaintiff was never provided nor aware of any such policies of "Business Ethics and Conduct," and Defendant fabricated the policies for purposes of furthering its conduct to wrongfully terminate Plaintiff.

95. There is no evidence of corruption, no evidence Plaintiff engaged in any wrongful conduct, and no evidence Plaintiff violated any standards of conduct.

96. On November 16, 2021, Defendant terminated Plaintiff because he is of "corrupt Mexican descent" working with the allegedly corrupt government.  Defendant maliciously designed an oppressive charade and fraudulent investigation for purposes of furthering the termination,

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

incredulously asserting a blanket claim that Mexican officials are corrupt, that dealings in Mexico are therefore inherently corrupt, that Plaintiff is corrupt, and Plaintiff's dealings with Mexico are corrupt.

97. Plaintiff demanded all records related to the investigation and documents supporting Defendant's conclusion.  Defendant refused to provide any records of its investigation, findings, or any other evidence supporting Defendant's conclusion that Plaintiff violated any policy. There is no evidence of corruption – of Mexico's officials, of Plaintiff, or of Defendant's employees or contractors in Mexico.

98. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered harm in the form of lost wages, lost bonuses, lost incentive pay, and other benefits of employment in an amount of no less than $1,315,000.00, or in an amount according to proof at time of trial.

99. Defendant's termination of Plaintiff is in violation of the California Fair Employment and Housing Act.  Pursuant to California Government Code section 12965(c)(6), Plaintiff is entitled to and seeks recovery of reasonable attorney fees and costs, including expert witness fees.

100. The acts of Defendant are malicious, oppressive, and fraudulent, and therefore Plaintiff is entitled to exemplary damages in an amount according to proof at time of trial.

## SEVENTH CAUSE OF ACTION

**[Wrongful Termination by Disparate Treatment in Violation of FEHA against All Defendants]**

101. Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

102. During his employment and with Defendant's knowledge and approval, Plaintiff developed International Contracts and International Opportunities in Latin America, including with the United Mexican States ("Mexico").

103. Plaintiff engaged in weekly meetings with Defendant's CEO and respective responsible officers to advise and apprise of the Mexico negotiations and development.  Plaintiff sought and received from Defendant approval for each step of the Mexico contract negotiation and implementation, and Defendant had knowledge of and approved each person's involvement in

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

the International Contract negotiations and development, including employees and contractors. Defendant knew and approved of each person Defendant hired in Mexico to negotiate and implement the contract in Mexico.

104. Defendant encouraged and furthered Plaintiff's participation in the contract with Mexico because Plaintiff is of Mexican descent and is fluent in Spanish.

105. Notwithstanding, in or about October 2021, Defendant appointed a third-party agent to investigate Plaintiff's contract negotiations in Mexico.  Defendant's agents began questioning Plaintiff as to the "appropriateness" of the International Contract and International Opportunities in Mexico, as well as Plaintiff's purported conduct with third persons in Mexico.

106. Defendant's third-party agent initiated an aggrandized and aggressive investigation related to Defendant's international contracts, including those involving Latin American employees or contractors.

107. Upon information and belief, over the period of October 2021 to mid-2022, Plaintiff and other of Defendant's employees of Latin American heritage or descent were subjected to a hostile and intimidating interrogation.

108. Upon information and belief, Plaintiff and other employees were informed of rampant corruption in Mexico and Latin America and that Latin American government officials were corrupt, including those with whom Plaintiff and other of Defendant's employees or contractors were working.

109. Upon information and belief, Defendant's agent stated to other of Defendant's employees that because there was rampant corruption in Latin America, then the other of Defendant's Latin American employees were involved in corruption.

110. Defendant used the sham investigation to support its claim that Plaintiff and other of Defendant's employees violated Defendant's purported "Standards of Business Ethics and Conduct."

111. Plaintiff was, and, upon information and belief, other employees were never provided nor made aware of any such policies of "Business Ethics and Conduct."  Defendant fabricated the policies for purposes of furthering its conduct to wrongfully terminate Plaintiff and other of Defendant's

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

employees of Latin American heritage or descent.

112. There is no evidence of corruption, no evidence that Plaintiff or any other employee engaged in any wrongful conduct, or that Plaintiff or any other employee violated any ethical standards of conduct.

113. On November 16, 2021, Defendant terminated Plaintiff because he is of Mexican descent and because he was, as Defendant claims through its sham investigation, involved in corruption in Mexico and Latin America.

114. Upon information and belief, and on dates in close proximity to the termination of Plaintiff, Defendant terminated other of Defendant's employees and contractors because they are of Latin American descent.

115. Defendant maliciously designed a charade and fraudulent investigation for purposes of furthering the terminations, incredulously asserting a blanket claim that Mexico Latin American officials are corrupt, that dealings in Mexico and Latin America are therefore inherently corrupt, and that Plaintiff and other of Defendant's employees are corrupt, and Plaintiff's and other employees' dealings with Mexico and Latin America are therefore corrupt.

116. After Plaintiff's demand, Defendant refused to provide any records of its investigation, findings, or any other evidence supporting Defendant's conclusion that Plaintiff violated any policy.  Upon information and belief, Defendant failed or refused to provide any records of its investigations, findings, or other evidence supporting Defendant's conclusion that other employees violated any policy.  There is no evidence of corruption – of Latin American officials, of Plaintiff, or of Defendant's other employees or contractors

117. The conduct of Defendant constitutes disparate treatment under the Fair Employment and Housing Act.

118. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered harm in the form of lost wages, lost bonuses, lost incentive pay, and other benefits of employment in an amount of no less than $1,315,000.00, or in an amount according to proof at time of trial.

119. Defendant's termination of Plaintiff and other employees is in violation of the California Fair Employment and Housing Act.  Pursuant to California Government Code section 12965(c)(6),

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

Plaintiff is entitled to and seeks recovery of reasonable attorney fees and costs, including expert witness fees.

120. The acts of Defendant are malicious, oppressive, and fraudulent, and therefore Plaintiff is entitled to exemplary damages in an amount according to proof at time of trial.

## EIGHTH CAUSE OF ACTION

### [Failure to Reimburse Business Expenses (Lab. C. § 2802) against All Defendants]

121. Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

122. During the course of Plaintiff's employment with Defendant, Plaintiff paid expenses associated with or required as a result of his employment.  Plaintiff submitted a request for reimbursement, but was refused reimbursement by Defendant.

123. Pursuant to Labor Code section 2802, Defendant is required to fully indemnify Plaintiff against losses incurred by Defendant during the ordinary course of business.

124. As a direct and proximate result of Defendant's failure and refusal to reimburse Plaintiff for expenses, Plaintiff has suffered damages in an amount no less than $3,100.00, or in an amount according to proof at time of trial.

125. Pursuant to Labor Code sections 2802 and 2804, Plaintiff is entitled to recover from Defendant, and each of them, the full amount of expenses he incurred in the performance of his job duties, plus interest, reasonable attorney's fees, and costs of suit.

## NINTH CAUSE OF ACTION

### [Defamation against All Defendants]

126. Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

127. In a writing dated November 16, 2021, Defendant terminated Plaintiff under a fraudulent and fabricated pretense that Plaintiff violated Defendant's policies and procedures.

128. On November 16, 2021, and on unknown dates subsequent thereto, Defendant stated to

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

Defendant's customers that Plaintiff violated Defendant's policies and that his employment was terminated as a result thereof.

129. On November 16, 2021, and on unknown dates subsequent thereto, Defendant stated to Defendant's employees that Plaintiff violated Defendant's policies and that his employment was terminated as a result thereof.

130. The statements regarding Plaintiff were false, fabricated, and fraudulent.

131. As a direct and proximate result of Plaintiff's dissemination of the statements to customers and employees, Plaintiff has suffered damages to Plaintiff's profession, trade, and reputation.

132. As a direct and proximate result of Plaintiff's dissemination of the statements to customers and employees, Plaintiff has experienced shame, embarrassment, mortification, anxiety, worry, and hurt feelings, and exposed Plaintiff to ridicule and to be shunned and avoided in his occupation and trade.

133. As a direct and proximate result of Plaintiff's dissemination of the statements to customers and employees, Plaintiff has suffered general and special damages in an amount according to proof at time of trial.

## **TENTH CAUSE OF ACTION**

**[Violation of Business and Professions Code sections 17200 *et seq.* against All Defendants]**

134. Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

135. The conduct of Defendant as alleged herein constitutes a violation of Labor Code sections 201, 203, 218, 246, 2803, and FEHA.

136. Upon information and belief, the conduct alleged of Defendant is continuing, and other employees have been subjected to the same unlawful business practices.

137. Therefore, pursuant to Business and Professions Code sections 17200 *et seq.*, Plaintiff is entitled to injunctive relief prohibiting Defendant from further engaging in unlawful business practices.

138. Pursuant to Business and Professions Code sections 17200 *et seq.,* Plaintiff is entitled to

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

disgorgement of all benefits received by Defendant by its unlawful business practices.

///

///

///

///

///

///

**WHEREFORE, Plaintiff GEORGE WALTHER-MEADE** hereby seeks judgment in Plaintiff's favor and against Defendant LEIDOS, INC. and DOES 1-10 as follows:

1. For special damages in an amount of no less than $215,065,000.00, or in an amount according to proof at time of trial;

2. For disgorgement of monies retained by Defendant for Plaintiff's stock options and long-term incentive plans in an amount of no less than $535,531.00, or in an amount according to proof at time of trial;

3. For all available relief under the California Business and Professions Code, including, but not limited to, restitution of monies retained or profited by unlawful business practices, disgorgement of stock options owed Plaintiff at the time of termination, as well as a preliminary and permanent injunction ordering Defendants to cease the unlawful and unfair business practices by Defendants against Plaintiff and other current and former employees;

4. For exemplary damages on those causes for which exemplary damages are permitted, and in an amount according to proof at time of trial;

5. For statutory penalties in the amount of $130,925.00, or in an amount according to proof at time of trial;

6. For an order of payment of unreimbursed business expenses in the amount of $3,100.00;

7. For prejudgment interest at the legal rate on amounts owed to Plaintiff at the time of Plaintiff's termination;

8. For attorney fees and costs;

RAMEY LITIGATION GROUP
A Professional Law Corporation

3838 Camino del Rio North, Suite 120
San Diego, CA 92108

9.  For any other and further relief this Court deems just and proper.

Respectfully submitted,

Dated: October 3, 2022                    **RAMEY LITIGATION GROUP APC**

/Signed per Cal. Rules Ct. rule 2.257/

By: _____

Christopher L. Ramey, Esq.
Attorneys for Plaintiff George Walther-Meade