1  HARDY RAY MURPHY, CA Bar No. 187149
   hardy.murphy@ogletree.com
2  RYAN T. CHUMAN, CA Bar No. 300695
   ryan.chuman@ogletree.com
3  OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.
4  400 South Hope Street, Suite 1200
   Los Angeles, CA 90071
5  Telephone: 213-239-9800
   Facsimile: 213-239-9045
6
7  Attorneys for Defendant/Cross-Complainant
   LEIDOS, INC.

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11 GEORGE WALTHER-MEADE, an individual;    Case No. 3:22-cv-1777-JAH-BLM

12            Plaintiff,                    **DEFENDANT LEIDOS, INC.'S
                                           ANSWER TO PLAINTIFF
13       vs.                               GEORGE WALTHER-
                                           MEADE'S COMPLAINT AND
14 LEIDOS, INC., a Delaware corporation; and  COUNTER-CLAIMS AGAINST
   DOES 1-10, inclusive;                   GEORGE WALTHER-MEADE
15                                         FOR:
            Defendants.
16                                         1. EMBEZZLEMENT;
                                           2. BREACH OF DUTY OF
17                                         LOYALTY;
                                           3. CONVERSION;
18                                         4. UNJUST ENRICHMENT;
                                           AND
19                                         5. INTENTIONAL
                                           MISREPRESENTATION;**
20

21 ─────────────────────────────────────
   LEIDOS, INC., a Delaware corporation,   Complaint Filed: October 27, 2022
22                                         Trial Date:      None
            Cross-Complainant,             District Judge:  Hon. John A.
23                                                          Houston
       vs.                                                  Courtroom 13B,
24                                                          San Diego
   GEORGE WALTHER-MEADE, an individual,    Magistrate Judge: Hon. Barbara
25                                                          Lynn Major
            Cross-Defendant.                                Courtroom/Suite
26                                                          1110,
                                                            San Diego
27

28
                                    1          Case No. 3:22-cv-1777-JAH-BLM
─────────────────────────────────────────────────────────────────
                        DEFENDANT LEIDOS, INC.'S
   ANSWER AND COUNTERCLAIMS TO PLAINTIFF GEORGE WALTHER-MEADE'S COMPLAINT

Defendant Leidos, Inc. ("Leidos" or the "Company"), by and through its undersigned counsel, answers the civil complaint ("Complaint") filed by Plaintiff George Walther-Meade ("Plaintiff" and "Cross-Defendant") as follows:

## **INTRODUCTION[1]**

1.      Paragraph 1 of Plaintiff's Complaint contains general statements and legal conclusions to which no response is required.  To the extent a response is required, Leidos denies the allegations.

2.      Paragraph 2 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies the allegations.

3.      Paragraph 3 of the Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent Paragraph 3 is deemed to contain factual allegations, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

4.      Answering paragraph 4 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

5.      Paragraph 5 of Plaintiff's Complaint contains general statements and legal conclusions to which no response is required.  To the extent a response is required, Leidos denies the allegations.

6.      Answering paragraph 6 of Plaintiff's Complaint, Leidos admits that Plaintiff is a resident in the judicial district of San Diego, County, California.

7.      Answering paragraph 7 of Plaintiff's Complaint, Leidos admits it is incorporated in the State of Delaware and that the Company's corporate headquarters

---

[1] Leidos's Answer is prepared in response to the filed Complaint.  Please note that the filed Complaint and the service copy are off by one paragraph starting from paragraph 121.

is located at 1750 Presidents Street, Reston, Virginia, 20190.  Leidos further admits that it conducts business in the judicial district of the Southern District of California.

8.      Paragraph 8 of Plaintiff's Complaint contains only a general statement defining the term "Defendant" to which no response is required.  To the extent a response is required, Leidos admits that it is a defendant in the above-captioned action but otherwise denies the allegations.

9.      Paragraph 9 of Plaintiff's Complaint contains allegations and legal conclusions concerning jurisdiction to which no response is required.  To the extent a response is required, Leidos alleges that this Court has subject matter jurisdiction over the action based on diversity jurisdiction pursuant to U.S.C. §§ 1332, 1441(a) and 1441(b) in that there is complete diversity between Plaintiff, a resident of California, and Leidos, a resident of Delaware and Virginia, and the amount in controversy exceeds the jurisdictional minimum of $75,000.

10.      Paragraph 10 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies the allegations.

## PRELIMINARY FACTS
## APPLICABLE TO ALL CAUSES OF ACTION

11.      Answering paragraph 11 of the Plaintiff's Complaint, Leidos restates and realleges each of the foregoing paragraphs as if fully set forth herein.

12.      Answering paragraph 12 of Plaintiff's Complaint, Leidos admits that it is a publicly traded, international organization in various markets, including military and civilian security applications.

13.      Answering paragraph 13 of Plaintiff's Complaint, Leidos admits that Leidos hired Plaintiff as a Senior Subcontractor Administrator in 2003.  Plaintiff was an exempt employee in this role.  Leidos also admits that Plaintiff worked as the Company's Vice President, Division Manager for Leidos's Security and Transportation Technology division when Leidos terminated his employment on

November 16, 2021.  Except as expressly admitted, Leidos denies the remaining allegations.

14.     Answering paragraph 14 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

15.     Answering paragraph 15 of Plaintiff's Complaint, Leidos admits that it conducted performance reviews assessing Plaintiff's overall and specific job performance, including evaluation of operational and sales goals.  Except as expressly admitted, Leidos lacks information sufficient to form a belief about the truth of the remaining allegations in the paragraph, and on that basis, denies the allegations.

16.     Answering paragraph 16 of Plaintiff's Complaint, Leidos admits that it paid Plaintiff a base salary and provided the opportunity to receive commissions, bonuses, and stock options if earned.  Leidos lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and on that basis, denies the allegations.

17.     Answering paragraph 17 of Plaintiff's Complaint, Leidos admits that as a Division Manager, Plaintiff was eligible to receive Long Term Incentives if earned.  Paragraph 17 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent Paragraph 17 is deemed to contain factual allegations in addition to these expressly admitted, Leidos denies the remaining allegations.  Except as expressly admitted, Leidos denies the remaining allegations.

18.     Answering paragraph 18 of Plaintiff's Complaint, Leidos admits that in May 2020, the Company approved an equity award of $150,000 in Restricted Stock Units to Plaintiff, subject to his continued service.  Leidos further admits that the Restricted Stock Units vested in full on the third anniversary of the grant date of May 8, 2020.  Paragraph 18 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent Paragraph 18 is deemed to contain factual

allegations in addition to those expressly admitted, Leidos denies the remaining allegations.

19.     Answering paragraph 19 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

20.     Answering paragraph 20 of Plaintiff's Complaint, Leidos admits that Plaintiff's job duties included management of international, service-related contracts. Leidos lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and on that basis, denies the allegations.

21.     Answering paragraph 21 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

22.     Answering paragraph 22 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

23.     Answering paragraph 23 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

24.     Answering paragraph 24 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

25.     Answering paragraph 25 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

26.     Answering paragraph 26 of Plaintiff's Complaint, Leidos denies the allegations.

27.     Answering paragraph 27 of Plaintiff's Complaint, Leidos denies the allegations.

28.     Answering paragraph 28 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

29.     Answering paragraph 29 of Plaintiff's Complaint, Leidos admits that the Company interviewed Plaintiff in October 2021. Except as expressly admitted, Leidos denies the remaining allegations.

30.     Answering paragraph 30 of Plaintiff's Complaint, Leidos denies the allegations.

31.     Answering paragraph 31 of Plaintiff's Complaint, Leidos admits that during the October 2021 interview of Plaintiff, Leidos questioned Plaintiff about a familial relationship with one of Leidos's consultants. Except as expressly stated, Leidos denies all remaining allegations in the paragraph.

32.     Answering paragraph 32 of Plaintiff's Complaint, Leidos denies the allegations.

33.     Answering paragraph 33 of Plaintiff's Complaint, Leidos denies the allegations.

34.     Answering paragraph 34 of Plaintiff's Complaint, Leidos admits that on or about November 9, 2021, Leidos requested a meeting with Plaintiff. Leidos lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and on that basis, denies the allegations.

35.     Answering paragraph 35 of Plaintiff's Complaint, Leidos admits that it instructed Plaintiff to not contact any of Defendant's customers while on suspension, which he was as of October 26, 2021. Leidos lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and on that basis, denies the allegations.

36.     Answering paragraph 36 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

37.     Answering paragraph 37 of Plaintiff's Complaint, Leidos admits that the Company provided Plaintiff with written notice of Leidos's decision to terminate his employment for violations of Defendant's policies.  Except as expressly stated, Leidos denies the remaining allegations.

38.     Answering paragraph 38 of Plaintiff's Complaint, Leidos denies these allegations.

39.     Answering paragraph 39 of Plaintiff's Complaint, Leidos denies these allegations.

40.     Answering paragraph 40 of Plaintiff's Complaint, Leidos denies these allegations.

41.     Answering paragraph 41 of Plaintiff's Complaint, Leidos denies these allegations.

42.     Answering paragraph 42 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

43.     Answering paragraph 43 of Plaintiff's Complaint, Leidos denies these allegations.

## **FIRST CAUSE OF ACTION**

### **[Breach of Implied Employment Contract against All Defendants]**

44.     Answering paragraph 44 of the Plaintiff's Complaint, Leidos restates and realleges each of the foregoing paragraphs as if fully set forth herein.

45.     Answering paragraph 45 of Plaintiff's Complaint, Leidos admits that Leidos hired Plaintiff as a Senior Subcontractor Administrator in 2003.  Leidos also admits that it paid Plaintiff a base salary and provided the opportunity to receive commissions, bonuses, and stock options if earned.  Leidos lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and on that basis, denies the allegations.

46.     Answering paragraph 46 of Plaintiff's Complaint, Leidos admits that it conducted performance reviews assessing Plaintiff's overall and specific job performance, including evaluation of operational and sales goals.  Except as expressly admitted, Leidos lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and on that basis, denies the allegations.

47.     Answering paragraph 47 of Plaintiff's Complaint, Leidos admits that it maintained and continues to maintain legally compliant policies that include grounds for termination and termination procedures at all times relevant to this action. Except as expressly admitted, Leidos denies the remaining allegations.

48.     Paragraph 48 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos admits that it promoted Plaintiff, paid him a base salary, delegated management responsibilities, and provided the opportunity to earn commissions, bonuses, and stock options if earned.  Except as expressly admitted, Leidos denies the remaining allegations.

49.     Paragraph 49 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

50.     Paragraph 50 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

51.     Paragraph 51 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

52.     Paragraph 52 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

53.     Paragraph 53 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

## SECOND CAUSE OF ACTION

### [Breach of Implied Covenant of Good Faith and Fair Dealing against All Defendants]

54.      Answering paragraph 54 of the Plaintiff's Complaint, Leidos restates and realleges each of the foregoing paragraphs as if fully set forth herein.

55.     Paragraph 55 of Plaintiff's Complaint contains legal conclusions to which no response is required.

56.     Paragraph 56 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent paragraph 56 is deemed to contain factual allegations, Leidos denies these allegations.

57.     Paragraph 57 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent paragraph 57 is deemed to contain factual allegations, Leidos denies these allegations.

58.     Paragraph 58 of Plaintiff's Complain contains legal conclusions to which no response is required.  To the extent paragraph 58 is deemed to contain factual allegations, Leidos denies these allegations.

59.     Answering paragraph 59 of Plaintiff's Complaint, Leidos denies these allegations.

60.     Answering paragraph 60 of Plaintiff's Complaint, Leidos denies these allegations.

61.     Paragraph 61 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

62.     Answering paragraph 62 of Plaintiff's Complaint, Leidos denies these allegations.

63.     Paragraph 63 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent paragraph 63 is deemed to contain factual allegations, Leidos denies these allegations.

64.     Paragraph 64 of Plaintiff's Complaint contains legal conclusions to which no response is required.

## THIRD CAUSE OF ACTION

### [Wrongful Termination in Violation of Public Policy (Sick Leave) against All Defendants]

65.     Answering paragraph 65 of the Plaintiff's Complaint, Leidos restates and realleges each of the foregoing paragraphs as if fully set forth herein.

66.     Paragraph 66 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

67.     Answering paragraph 67 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

68.     Answering paragraph 68 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

69.     Answering paragraph 69 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

70.     Answering paragraph 70 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

71.     Answering paragraph 71 of Plaintiff's Complaint, Leidos admits that Leidos terminated Plaintiff's employment on or about November 16, 2021.  Except

1    as expressly stated, Leidos denies the remaining allegations.

2    72.    Paragraph 72 of Plaintiff's Complaint contains legal conclusions to

3    which no response is required.  To the extent a response is required, Leidos denies

4    these allegations.

5    73.    Paragraph 73 of Plaintiff's Complaint contains legal conclusions to

6    which no response is required.  To the extent paragraph 73 is deemed to contain

7    factual allegations, Leidos denies these allegations.

8    74.    Paragraph 74 of Plaintiff's Complaint contains legal conclusions to

9    which no response is required.  To the extent a response is required, Leidos denies

10   these allegations.

## FOURTH CAUSE OF ACTION

**[Failure to Pay All Wages Owed Upon Termination against All Defendants]**

13   75.    Answering paragraph 75 of the Plaintiff's Complaint, Leidos restates

14   and realleges each of the foregoing paragraphs as if fully set forth herein.

15   76.    Answering Paragraph 76 of Plaintiff's Complaint, Leidos admits to the

16   allegations.

17   77.    Answering paragraph 77 of Plaintiff's Complaint, Leidos denies these

18   allegations.

19   78.    Answering paragraph 78 of Plaintiff's Complaint, Leidos denies these

20   allegations.

21   79.    The first and third sentences of paragraph 79 of Plaintiff's Complaint

22   contain legal conclusions to which no response is required.  To the extent a response

23   is required, Leidos denies these allegations.  Answering the second sentence of

24   paragraph 79 of Plaintiff's Complaint, Leidos lacks knowledge or information

25   sufficient to form a belief about the truth of the allegations in this paragraph, and on

26   that basis, denies the allegations.

27   80.    Paragraph 80 of Plaintiff's Complaint contains legal conclusions to

28   which no response is required.  To the extent a response is required, Leidos denies

these allegations.

## FIFTH CAUSE OF ACTION

### [Failure to Provide Accurate Wage Statements against All Defendants]

81.     Answering paragraph 81 of the Plaintiff's Complaint, Leidos restates and realleges each of the foregoing paragraphs as if fully set forth herein.

82.     Paragraph 82 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

83.     Paragraph 83 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

84.     Paragraph 84 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent paragraph 84 is deemed to contain factual allegations, Leidos denies these allegations.

85.     Answering the first sentence of paragraph 85, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.  The second sentence of Paragraph 85 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

## SIXTH CAUSE OF ACTION

### [Wrongful Termination in Violation of Public Policy (Discrimination) against All Defendants]

86.     Answering paragraph 86 of the Plaintiff's Complaint, Leidos restates and realleges each of the foregoing paragraphs as if fully set forth herein.

87.     Answering paragraph 87 of Plaintiff's Complaint, Leidos admits that Plaintiff's job required him to conduct business in Latin America, including Mexico. Except as expressly admitted, Leidos lacks knowledge or information sufficient to

form a belief about the truth of the allegations in this paragraph, and on that basis, denies the remaining allegations.

88.     Answering paragraph 88 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

89.     Answering paragraph 89 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

90.     Answering paragraph 90 of Plaintiff's Complaint, Leidos admits that the Company interviewed Plaintiff in October 2021.  Except as expressly admitted, Leidos denies the remaining allegations.

91.     Answering paragraph 91 of Plaintiff's Complaint, Leidos denies these allegations.

92.     Answering paragraph 92 of Plaintiff's Complaint, Leidos denies these allegations.

93.     Answering paragraph 93 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

94.     Answering paragraph 94 of Plaintiff's Complaint, Leidos denies these allegations.

95.     Paragraph 95 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

96.     Answering paragraph 96 of Plaintiff's Complaint, Leidos admits that Leidos terminated Plaintiff's employment on or about November 16, 2021.  Except as expressly stated, Leidos denies the remaining allegations.

97.     Answering the first and second sentences of paragraph 97 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph, and on that basis, denies the allegations. The third sentence of paragraph 97 contains legal conclusions to which no response is required.

98.     Paragraph 98 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

99.     Paragraph 99 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

100.   Paragraph 100 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

## SEVENTH CAUSE OF ACTION

**[Wrongful Termination by Disparate Treatment in Violation of FEHA against All Defendants]**

101.   Answering paragraph 101 of the Plaintiff's Complaint, Leidos restates and realleges each of the foregoing paragraphs as if fully set forth herein.

102.   Answering paragraph 102 of Plaintiff's Complaint, Leidos admits that Plaintiff's job required him to conduct business in Latin America, including Mexico. Except as expressly admitted, Leidos lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis, denies the remaining allegations.

103.   Answering paragraph 103 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

104.   Answering paragraph 104 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

105.   Answering paragraph 105 of Plaintiff's Complaint, Leidos admits that the Company interviewed Plaintiff in October 2021.  Except as expressly admitted, Leidos denies the remaining allegations.

106.   Answering paragraph 106 of Plaintiff's Complaint, Leidos denies these allegations.

107.   Answering paragraph 107 of Plaintiff's Complaint, Leidos denies these allegations.

108.   Answering paragraph 108 of Plaintiff's Complaint, Leidos lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and on that basis, denies the allegations.

109.   Answering paragraph 109 of Plaintiff's Complaint, Leidos denies these allegations.

110.   Answering paragraph 110 of Plaintiff's Complaint, Leidos denies these allegations.

111.   Answering paragraph 111 of Plaintiff's Complaint, Leidos denies these allegations.

112.   Paragraph 112 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

113.   Answering paragraph 113 of Plaintiff's Complaint, Leidos admits that Leidos terminated Plaintiff's employment on or about November 16, 2021.  Except as expressly stated, Leidos denies the remaining allegations.

114.   Answering paragraph 114 of Plaintiff's Complaint, Leidos denies these allegations.

115.   Answering paragraph 115 of Plaintiff's Complaint, Leidos denies these allegations.

116.   Answering paragraph 116 of Plaintiff's Complaint, Leidos denies these allegations.

117.   Paragraph 117 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

118.   Paragraph 118 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

119.   Paragraph 119 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

120.   Paragraph 120 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

121.   Paragraph 121 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

## EIGHTH CAUSE OF ACTION

### [Failure to Reimburse Business Expenses (Lab. C. § 2802) against All Defendants]

122.   Answering paragraph 122 of the Plaintiff's Complaint, Leidos restates and realleges each of the foregoing paragraphs as if fully set forth herein.

123.   Answering paragraph 123 of Plaintiff's Complaint, Leidos admits that it reimbursed certain business expenses pursuant to Leidos's Company policies. Except as expressly admitted, Leidos denies the remaining allegations.

124.   Paragraph 124 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

125.   Paragraph 125 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies

1  these allegations.

2      126.   Paragraph 126 of Plaintiff's Complaint contains legal conclusions to

3  which no response is required.  To the extent a response is required, Leidos denies

4  these allegations.

5                    **NINTH CAUSE OF ACTION**

6                  **[Defamation against All Defendants]**

7      127.   Answering paragraph 127 of Plaintiff's Complaint, Leidos admits that

8  on November 16, 2021, the Company provided Plaintiff with written notice of

9  Leidos's decision to terminate his employment.  Except as expressly admitted,

10  Leidos denies the remaining allegations.

11      128.   Answering paragraph 128 of Plaintiff's Complaint, Leidos lacks

12  knowledge or information sufficient to form a belief about the truth of the allegations

13  in this paragraph, and on that basis, denies these allegations.

14      129.   Answering paragraph 129 of Plaintiff's Complaint, Leidos lacks

15  knowledge or information sufficient to form a belief about the truth of the allegations

16  in this paragraph, and on that basis, denies these allegations.

17      130.   Answering paragraph 130 of Plaintiff's Complaint, Leidos denies these

18  allegations.

19      131.   Paragraph 131 of Plaintiff's Complaint contains legal conclusions to

20  which no response is required.  To the extent paragraph 131 is deemed to contain

21  factual allegations, Leidos lacks knowledge or information sufficient to form a belief

22  about the truth of the allegations in this paragraph, and on that basis, denies these

23  allegations.

24      132.   Paragraph 132 of Plaintiff's Complaint contains legal conclusions to

25  which no response is required.  To the extent paragraph 132 is deemed to contain

26  factual allegations, Leidos lacks knowledge or information sufficient to form a belief

27  about the truth of the allegations in this paragraph, and on that basis, denies these

28  allegations.

133.   Paragraph 133 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

134.   Answering paragraph 134 of the Plaintiff's Complaint, Leidos restates and realleges each of the foregoing paragraphs as if fully set forth herein.

## TENTH CAUSE OF ACTION

### [Violation of Business and Professions Code sections 17200 *et seq.* against All Defendants]

135.    Answering paragraph 135 of the Plaintiff's Complaint, Leidos restates and realleges each of the foregoing paragraphs as if fully set forth herein.

136.   Paragraph 136 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

137.   Paragraph 137 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent paragraph 136 is deemed to contain factual allegations, Leidos denies these allegations.

138.   Paragraph 138 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

139.   Paragraph 139 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Leidos denies these allegations.

## PLAINTIFF'S PRAYER FOR RELIEF

1.     Answering paragraph 1 of Plaintiff's Prayer for Relief, Leidos denies that Plaintiff is entitled to any relief, damages, costs, or fees.

2.     Answering paragraph 2 of Plaintiff's Prayer for Relief, Leidos denies that Plaintiff is entitled to any relief, damages, costs, or fees.

3.      Answering paragraph 3 of Plaintiff's Prayer for Relief, Leidos denies that Plaintiff is entitled to any relief, damages, costs, or fees.

4.      Answering paragraph 4 of Plaintiff's Prayer for Relief, Leidos denies that Plaintiff is entitled to any relief, damages, costs, or fees.

5.      Answering paragraph 5 of Plaintiff's Prayer for Relief, Leidos denies that Plaintiff is entitled to any relief, damages, costs, or fees.

6.      Answering paragraph 6 of Plaintiff's Prayer for Relief, Leidos denies that Plaintiff is entitled to any relief, damages, costs, or fees.

7.      Answering paragraph 7 of Plaintiff's Prayer for Relief, Leidos denies that Plaintiff is entitled to any relief, damages, costs, or fees.

8.      Answering paragraph 8 of Plaintiff's Prayer for Relief, Leidos denies that Plaintiff is entitled to any relief, damages, costs, or fees.

## GENERAL DENIAL

All other allegations not specifically admitted are denied.

## AFFIRMATIVE DEFENSES

Additionally, without admitting that it carries the burden of proof as to any of the issues raised thereby, Leidos asserts the following separate and distinct affirmative and additional defenses to Plaintiff's Complaint and each purported cause of action therein and prays for judgment as set forth below.

Leidos also hereby gives notice that it intends to rely upon such other and further affirmative defenses as may become available during investigation and discovery in this action.  Leidos reserves the right to amend its Answer to assert any such defenses, or to modify its admissions and denials herein, based on such investigation and discovery.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

The Complaint, and each and every cause of action alleged therein fails to state facts sufficient to constitute a cause of action for which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (No Authorization or Ratification)

Any unlawful or wrongful acts, to the extent they exist, taken by Leidos's agents or employees were outside the course and scope of their authority and such acts, if any, were not authorized, ratified, or condoned by Leidos, and Leidos neither knew nor should it have known of such acts.

## THIRD AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

The Complaint, and each and every cause of action alleged therein, is barred, or any damages reduced, by after-acquired evidence.

## FOURTH AFFIRMATIVE DEFENSE

### (Appropriate Remedial Action Taken by Employer)

The Complaint, and each and every cause of action alleged therein, is barred, in whole or in part, because Leidos took reasonable steps to prevent and correct any harm alleged in the Complaint, including the purported discrimination, and also conducted appropriate, good faith, and prompt investigations of matters Plaintiff brought to Leidos's attention, if any, and timely and properly responded to those matters.

## FIFTH AFFIRMATIVE DEFENSE

### (Bona Fide Occupational Qualification)

Any alterations or modifications to Plaintiff's job duties were justified, not based on discriminatory reasons, and were justified based upon a bona fide business necessity and based upon bona fide occupational qualifications.

## SIXTH AFFIRMATIVE DEFENSE

### (Business Necessity)

Any and all wrongful conduct alleged by Plaintiff was necessitated due to business necessity.

///

## SEVENTH AFFIRMATIVE DEFENSE

### (Employer Lacked Knowledge)

The Complaint, and each and every cause of action alleged therein, is barred, or any damages reduced, because Leidos lacked knowledge that Plaintiff was allegedly discriminated or retaliated against.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Administrative Remedies)

The Complaint, and each and every cause of action alleged therein, is barred, or any damages reduced by Plaintiff's failure to exhaust administrative remedies.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

Plaintiff failed to take reasonable steps and make reasonable expenditures to reduce Plaintiff's claims, damages, losses, if any, and that said failure to mitigate Plaintiff's damages bars or reduces any claims, losses, or damages.

## TENTH AFFIRMATIVE DEFENSE

### (Avoidable Consequences)

The Complaint, and each and every cause of action alleged therein, is barred, or any damages reduced, by the doctrine of avoidable consequences because he unreasonably failed to take action to avoid his alleged damages, and some or all of his alleged damages would have been avoided by such action.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Compliance with California Labor Code and Business and Professions Code)

Plaintiff is not entitled to any penalty award under any provision of California law because at all relevant times, Leidos did not willfully, knowingly, or intentionally fail to comply with any provision of the California Labor Code or Business & Professions Code, but rather acted in good faith and had reasonable grounds for believing that it did not violate these provisions.

///

## TWELFTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

The Complaint, and each and every cause of action alleged therein, is barred by the doctrine of unclean hands.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim for Waiting Time Penalties)

The Complaint, and each and every cause of action alleged therein fails to state facts sufficient to state a claim for waiting time penalties under Labor Code section 203 and applicable federal law.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (No Business and Professions Code Violations)

Pursuant to Business & Professions Code section 17200, et seq., Plaintiff is not entitled to an award of damages.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Laches)

Leidos alleges that Plaintiff's Complaint is barred, in whole or in part, by the doctrine of laches.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Failure to Comply with Contractual Arbitration Agreement)

Plaintiff may not pursue the causes of action alleged in the Complaint in this forum or any other judicial forum because he entered into an enforceable agreement to arbitrate any claims arising out of his employment with Leidos in final and binding arbitration.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (No Discriminatory or Retaliatory Intent-Legitimate Reason)

The Complaint, and each and every cause of action alleged therein, is barred because there was no discriminatory intent, as Leidos's alleged actions were based on legitimate nondiscriminatory and nonretaliatory reasons.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Same Decision)

Should Plaintiff prove that any protected status or protected conduct was a substantial factor motivating the challenged employment action, which Leidos denies, Leidos would have taken or made the same employment actions as to Plaintiff based on other legitimate considerations, regardless of any such status of or conduct by Plaintiff.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

The Complaint, and each and every cause of action alleged therein, is barred by the applicable statute of limitations.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Plaintiff's Own Negligence)

If Plaintiff suffered any loss, damage, or detriment as a result of the facts alleged in the Complaint, which Leidos denies, such loss, damage, or detriment was caused and contributed to by Plaintiff's own actions.  Plaintiff's recovery, if any, from Leidos should be reduced in proportion to the percentage of his negligence and fault.

## TWENTYFIRST AFFIRMATIVE DEFENSE

### (Intervening Acts)

Leidos alleges that, if Plaintiff suffered any damages, including, but not limited to, emotional distress, those damages were caused by intervening, superseding, and/or independent factors unrelated to any alleged conduct of Leidos.

## TWENTYSECOND AFFIRMATIVE DEFENSE

### (Privilege/Justification/Managerial Immunity)

Leidos alleges that its conduct was a just and proper exercise of managerial discretion, undertaken for fair and honest reasons, comporting with good faith under the circumstances then existing, and was privileged and justified.

## TWENTYTHIRD AFFIRMATIVE DEFENSE

### (Waiver)

The Complaint, and each and every cause of action alleged therein, is barred by the doctrine of waiver.

## TWENTYFOURTH AFFIRMATIVE DEFENSE

### (Estoppel)

The Complaint, and each and every cause of action alleged therein, is barred by the doctrine of estoppel.

## TWENTYFIFTH AFFIRMATIVE DEFENSE

### (Breach of Implied Contract by Plaintiff)

The Complaint, and each and every cause of action alleged therein, is barred because Plaintiff failed to comply with the terms of the implied contract by breaching the implied warranty of good faith and fair dealing by acting unlawfully and unreasonably, denying the benefits of the contract to Leidos.

## TWENTYSIXTH AFFIRMATIVE DEFENSE

### (No Breach by Leidos)

The Complaint, and each and every cause of action alleged therein, is barred because Leidos performed all duties owed under the contract, other than any duties which were prevented or excused, and therefore never breached the agreement.

## TWENTYSEVENTH AFFIRMATIVE DEFENSE

### (No Punitive Damages)

The Complaint fails to allege facts or claims sufficient to sustain the imposition of punitive damage against Leidos, including, without limitation, a showing that Leidos engaged in malicious, oppressive, or reckless disregard of Plaintiff's rights.

## RESERVATION OF RIGHTS

Leidos may have additional defenses that cannot be articulated due to Plaintiff's failure to particularize Plaintiff's claims, due to the fact that Leidos does

not have copies of certain documents bearing on Plaintiff's claims, and due to Plaintiff's failure to provide more specific information concerning the nature of the damage claims and claims for certain costs, for which Plaintiff alleges that Leidos may share some responsibility.  Leidos therefore reserves the right to assert additional defenses upon further particularization of Plaintiff's claim, upon examination of the documents provided, upon discovery of further information concerning the alleged damage claims and claims for costs, and upon the development of other pertinent information.

## **PRAYER FOR RELIEF**

WHEREFORE, Leidos prays for judgment as follows:

1.    The Plaintiff takes nothing by way of the Complaint;

2.    That judgment be entered against Plaintiff and in favor of Leidos on all causes of action;

3.    That Leidos be awarded attorney's fees and costs of suit incurred herein; and

4.    That Leidos be awarded such other and further relief as the Court may deem just and proper.

DATED:  November 21, 2022

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:   /s/ Hardy Ray Murphy
Hardy Ray Murphy
Ryan T. Chuman

Attorneys for Defendant/Cross-Complainant
LEIDOS, INC.

**LEIDOS, INC.'S COUNTER-CLAIMS**

**AGAINST GEORGE WALTHER-MEADE**

Defendant and Counter-Claimant Leidos, Inc. ("Defendant/Counter-Claimant" or "Company" or "Leidos") brings these counter-claims for relief against Plaintiff and Counter-Defendant George Walther-Meade ("Plaintiff/Cross-Defendant" or "Walther-Meade") and alleges the following:

## I.    JURISDICTION

1.      This Court has supplemental jurisdiction over Leidos's counter-claims under 28 U.S.C. § 1367.

## II.    VENUE

2.      Venue is appropriate in this District.  Walther-Meade has filed breach of implied contract; breach of covenant of good faith and fair dealing; wrongful termination in violation public policy; failure to pay all wages owed upon termination; failure to provide accurate wage statements; disparate treatment in violation of FEHA; failure to reimburse business expenses; defamation; and violation of Business and Professions Code sections 17200, *et seq*., claims against Leidos that are currently pending in this court, which supports this Court's supplemental jurisdiction over Leidos's counter-claims.  Additionally, Leidos does business in this District, and upon information and belief, Walther-Meade is a resident of San Diego, California, which is located in this District.

## III.    PARTIES

3.      Leidos is, and at all relevant times was, a corporation incorporated in the state of Delaware with its principal place of business in the state of Virginia.

4.      Walther-Meade, on information and belief, is and at all relevant times was, a resident of the State of California, County of San Diego.

///

///

///

# IV.   FACTUAL ALLEGATIONS

**Company Overview**

5.     Leidos is engaged in the design, manufacture, and sale of a diverse portfolio of products, systems, and solutions in key industries such as civil, defense, health, and intelligence.

6.     Since 1999, Leidos has been a world leader in the design, manufacture, and sale of non-intrusive inspection technology, including x-ray inspection systems capable of scanning human individuals as well as cargo containers, trucks, railcars, buses, and passenger vehicles.

7.     Leidos also partners with and/or services a broad range of public and private sector clients in the United States and internationally.

8.     Leidos relies on in-house Account Managers and Business Development Managers to facilitate Leidos's domestic and international operations and to cultivate business with active and prospective clients.  Each Account Manager and/or Business Development Manager is assigned specific global regions in which he or she is responsible for servicing clients and developing business.

**Walther-Meade's Duties and Responsibilities / Policy Acknowledgments**

9.     Walther-Meade is a former Division Manager for Leidos, who began his career in approximately January 2003 when the company was known as Science Applications International Corporation ("SAIC").

10.     In approximately December 2002, Walther-Meade submitted his application for employment as SAIC's Senior Subcontract Administrator.

11.     On December 23, 2002, SAIC presented Walther-Meade with an offer of employment for the Senior Subcontract Administrator position.  The offer indicated that his employment was contingent upon completing, signing, and returning SAIC's policies and procedures, which specifically included SAIC's

DEFENDANT LEIDOS, INC.'S
ANSWER AND COUNTERCLAIMS TO PLAINTIFF GEORGE WALTHER-MEADE'S COMPLAINT

Mutual Agreement to Arbitrate and Standards of Business Ethics and Conduct Certification.

12.    On December 26, 2002, Walther-Meade signed the offer of employment and indicated he would report to work on January 6, 2003.  In doing so, he acknowledged he understood his employment was "at will" and subject to SAIC's and its predecessors' policies and procedures.

13.    On January 4, 2003, Walther-Meade signed SAIC's Standards of Business Ethics and Conduct Certification Form.  Among other things, Walther-Meade acknowledged that he understood and agreed to disclose any information in his possession concerning conduct involving the Company, or those acting on its behalf, that may be illegal.

14.    In 2013, SAIC changed its name to Leidos and spun off a new and independent company that retained the name SAIC.

15.    The division in which Walther-Meade worked remained a division of Leidos.  Further, Walther-Meade remained employed with the same legal entity throughout the entirety of his employment, initially SAIC and then Leidos, as explained above.  Accordingly, when the name of Walther-Meade's employer changed from SAIC to Leidos, he nevertheless remained subject to the same SAIC policies and procedures he previously acknowledged, including SAIC's Mutual Agreement to Arbitrate and Standards of Business Ethics and Conduct Certification.  SAIC's Mutual Agreement to Arbitrate and Standards of Business Ethics and Conduct Certification was renamed with Leidos as the name of the employer.  Notably, the Leidos Standards of Business Ethics and Conduct, among other things, prohibits conflicts of interest, requires cooperation with investigations, and requires that employees disclose any information in their possession concerning conduct involving the Company, or those acting on its behalf, that may be illegal.

16.    In approximately February 2015, Leidos appointed Walther-Meade as Vice President, Director of Global Sales and Marketing, and he became accountable

for worldwide product sales to U.S. federal customers and international markets.  In this capacity, he oversaw personnel and efforts related to sales, marketing, and business development.

17.     In March 2019, he also briefly served as Acting Vice President, Division Manager for Leidos's Security & Transportation Technology ("S&TT") Division, leading an organization responsible for the development, manufacturing, sale, and implementation of global security screening products and related services.

18.     On November 21, 2019, Leidos presented Walther-Meade with an offer of transfer for the position of Division Manager of the S&TT Division, which carried the Vice President designation.  In this role, he was responsible for directing and growing division commitments for all customer, employee, program, financial, and new business strategies for Leidos's U.S. federal customers and international markets, including Mexico.

**Walther-Meade's Ethics Violations and Deceptive Practices against Leidos**

19.     Walther-Meade owed a duty of loyalty to Leidos as its Vice President and Division Manager.  Leidos paid Walther-Meade an annual salary of $315,000.00 to manage Leidos's domestic and international business operations relating to his division.  Without Leidos's knowledge or consent, and while still employed by Leidos, Walther-Meade actively concealed his familial and personal business relationships with third-party consultants in Mexico.  His failure to disclose this information was done knowingly and intentionally to engage Leidos in business transactions that violated the Company's Policies and Procedures, including Leidos's Standards of Business Ethics and Conduct. He also engaged in a fraudulent scheme with a vendor to embezzle money from Leidos.

20.     In connection with international transactions or opportunities, Leidos engages in a process known as the International Business Review Board ("IBRB") process.  Before Leidos executes an agreement with an intermediary, the

intermediary must undergo a process that includes, among other things, completing an anti-corruption questionnaire, an external due diligence report, and IBRB review and approval.

21.     In the summer and fall of 2021, Leidos conducted a due diligence review of Comunicaciones Puntuales, S.A. ("CP").  CP was founded by an individual named Oscar Fitch ("Fitch") and is one of Leidos's consultants in Mexico with whom Walther-Meade worked to develop business opportunities with Mexican Customs.

22.     During the IBRB process, Leidos became aware that an individual named Alvaro Quintana ("Quintana"), who was a CP principal, was not vetted through the IBRB process in violation of Leidos's policies and procedures.

23.     Quintana had served as the Head of Mexican Customs in 2000.  Leidos learned that Quintana left Mexican Customs in approximately 2001 due to a change in administration.

24.     On October 19, 2021, Leidos interviewed Walther-Meade in connection with its diligence of CP.

25.     During the interview, Walther-Meade lied about his familial relationship with Quintana.  Walther-Meade claimed Quintana was not his cousin and that he was not related to Quintana in any way.

26.     After further questioning, Walther-Meade altered his response to indicate that Quintana could possibly be his cousin, implying his family tree is far reaching in Mexico and he doesn't know everyone, but he still stated that he did not believe it was true that Quintana was his cousin.

27.     Leidos obtained documentary evidence to support that Walther-Meade was fully aware of his familial relationship with Quintana as early as October 2015. This documentary evidence includes, among other things, correspondence between Walther-Meade and Quintana in which they repeatedly refer to each other as "*primo*," the Spanish word for "cousin"; correspondence between Walther-Meade

DEFENDANT LEIDOS, INC.'S
ANSWER AND COUNTERCLAIMS TO PLAINTIFF GEORGE WALTHER-MEADE'S COMPLAINT

and his other immediate family members in which they discuss their familial relationship with Quintana; and a family tree drawn by Walther-Meade's mother illustrating that they are cousins.  Leidos also reviewed publicly available information, including various relatives' social media posts, indicating that Walther-Meade was aware of his familial relationship with Quintana prior to his October 2021 interview.

28.     Also during the interview, Walther-Meade denied having any business dealings with Fitch other than through CP.  However, Leidos uncovered two entities which, upon information and belief, demonstrate a prior business connection between Walther-Meade and Fitch.  The first entity, Fitch & Walther, Inc., was incorporated in California on June 10, 2014 and listed the address of the home Walther-Meade rented as the corporate address.  An individual named Juan Gonzalez Ruiz ("Ruiz") was listed as the agent for service of process for Fitch & Walther, Inc.  The second entity, Fitch & Walther Corporation, was formed in Delaware on June 24, 2014.  Upon information and belief, these entities were named after Walther-Meade and CP founder and principal Oscar Fitch. Walther-Meade never disclosed any previous business arrangements or dealings with Fitch before Leidos began working with CP.  During his October 2021 interview, Walther-Meade denied any connection to both entities.

29.     On the same day that Fitch & Walther, Inc., was incorporated in California, upon information and belief, the home that Walther-Meade rented from June 2014 through October 2021 appears to have been sold to a Family Trust.

30.     Walther-Meade revealed during his interview that Ruiz, the agent for service of process of Fitch & Walther, Inc., also had been a Leidos vendor for six to nine years, working on executing contracts for Mexican Customs and assisting Leidos to comply with health and safety regulations.

31.     Communications discovered after the October 2021 interview revealed Walther-Meade lied during his interview and was fully aware of the exact nature of

his familial relationship with Quintana.  In fact, Walther-Meade had been calling Quintana "cousin" since at least 2017.

32.     Additional information revealed that in November 2018, Quintana paid Walther-Meade's daughter's tuition fees of approximately $28,000 for a full semester at the University of Southern California.

33.     Quintana also gifted Walther-Meade free accommodations at luxury locations.  Upon information and belief, Quintana and Fitch paid for Walther-Meade and his family to stay in a vacation rental home on a private beach in Acapulco, Mexico for a week.

34.     On October 26, 2021, Leidos suspended Walther-Meade, pending further investigation, because he lied to Leidos about his relationship with Quintana, and he failed to disclose his familial relationship with Quintana as part of the due diligence process of CP.  Leidos instructed Walther-Meade to refrain from contacting any Leidos customer during his period of suspension.

35.     During his period of suspension, Leidos learned that in addition to accepting monetary payment from Quintana, Walther-Meade and Ruiz were engaged in a scheme to embezzle substantial sums of money from Leidos for nearly a decade.

36.     Since at least 2013, Leidos paid Ruiz, through his company JB Ruiz y Asociados, for services purportedly rendered in connection with maintenance contracts for Mexican Customs.  Leidos made payments to Ruiz's company pursuant to invoices submitted to Leidos—always for $84,000—at irregular intervals. All told, Walther-Meade and Ruiz embezzled at least approximately $3.2 million from Leidos between 2013 and 2021.

37.     Walther-Meade prepared a statement of work that represented Ruiz would provide auditing services that were allegedly required under Leidos's contract with Mexican Customs.  Leidos did not identify any credible evidence or documentation that Ruiz or his company actually provided any work or services to Leidos.

38.     Leidos also learned that Walther-Meade had access to and/or control over Ruiz's e-mail address, which was identified in invoices submitted to Leidos. Upon information and belief, Walther-Meade used Ruiz's e-mail to communicate with Leidos, guised as Ruiz, about invoices, submissions, and payments.

39.     Since at least 2016, Walther-Meade and Ruiz shared an American Express credit card.  Ruiz also maintained a bank account that Walther-Meade could access.

40.     Based on information and belief, Ruiz deposited payments he received from Leidos into the bank account that Walther-Meade could access, and this account was used to make payments to their shared American Express credit card.

41.     Based on information and belief, Walther-Meade used the American Express credit card for his children's university and private school tuition, and he made numerous luxury purchases, including cars, Cartier watches, designer clothing, cosmetic procedures, and luxury vacations with family and friends.

42.     In May 2016, Walther-Meade requested that Ruiz issue an American Express credit card to his wife.  And, in 2018, Walther-Meade requested that Ruiz issue American Express credit cards for his three children, all of whom used the cards for luxury purchases and trips.

43.     Leidos learned that Walther-Meade and Ruiz repeatedly used the word *jale* in their conversations.  Upon information and belief, *jale* is a Spanish-language word that can be translated as "pull" or as a slang term for "job."

44.     Based on information and belief, Walther-Meade and Ruiz referred to Ruiz's fraudulent invoices submitted to Leidos as "*jales*," and their conversations involved discussions about the logistics of these "*jales*."

45.     Based on information and belief, Walther-Meade would inform Ruiz when it was time for a "*jale*."  Ruiz would then submit fraudulent invoices to Leidos for alleged services conducted on its behalf.  For example, Walther-Meade would

DEFENDANT LEIDOS, INC.'S
ANSWER AND COUNTERCLAIMS TO PLAINTIFF GEORGE WALTHER-MEADE'S COMPLAINT

1  inform Ruiz that a "*jale*" might be necessary when the monthly American Express

2  credit card statements were particularly high.

3      46.   Based on information and belief, the money Leidos paid Ruiz would

4  then be used to pay the monthly American Express credit card statements, which

5  were sometimes as high as $150,000 a month.

6      47.   Leidos performed additional due diligence once it learned this

7  information and found no evidence of any work ever performed by Ruiz or his

8  company JB Ruiz y Asociados.

9      48.   Communications also revealed that Walther-Meade and Ruiz discussed

10  how to cash a check made out to the Fitch & Walther Corporation.  Ruiz sent

11  Walther-Meade a photograph of this check, and they determined that Walther-Meade

12  would likely have to cash the check himself.

13      49.   During his suspension, Walther-Meade requested to sit for a second

14  interview.  On November 8, 2021, Walther-Meade agreed to meet with Leidos on

15  November 10, 2021.  Walther-Meade did not mention his wife or any illness on this

16  call.

17      50.   Ten minutes prior to the scheduled time for the interview on November

18  10, 2021, Walther-Meade texted Leidos stating he was feeling unwell.  He did not

19  mention anything about his wife.  Leidos suggested rescheduling the interview to the

20  following morning.  After receiving no response from Walther-Meade, Leidos

21  proposed November 13, 2021 for the interview.

22      51.   On November 12, 2021, Walther-Meade replied that he would not

23  attend an interview on November 13, 2021, claiming that he was recovering from a

24  Covid booster shot he allegedly received on November 11, 2021, and that his wife

25  was undergoing a medical procedure on November 13, 2021.

26      52.   On November 13, 2021, Leidos reached out to Walther-Meade to

27  request he sit for an interview on November 15, 2021.  Walther-Meade replied on

28  November 15, 2021 declining to sit for the interview "due to medical reasons."

53.     Separately, on November 11, 2021, Leidos learned that Walther-Meade had been in contact with Mexican Customs officials during his suspension in contravention of Leidos's express instructions.

54.     As a result of the information described above, Leidos terminated Walther-Meade on or about November 16, 2021.

55.     Leidos's decision to terminate Walther-Meade's employment was based on numerous confirmed violations of the Company's Standards of Business Ethics and Conduct that include lying during his October 2021 interview, failing to disclose familial relations and outside business dealings with third party consultants, as required by Leidos Standards of Business Ethics and Conduct, and fraudulent conduct, including active participation in an embezzlement scheme against Leidos.

56.     Since Leidos terminated Walther-Meade's employment, Leidos learned of additional violations of the Company's Policies and Procedures by Walther-Meade.

57.     Further, on November 6, 2021, Walther-Meade submitted an expense report for travel to Puerto Rico from November 1 through November 6, 2021. Walther-Meade was suspended at this time and had been instructed not to engage with Leidos's customers.

58.     Walther-Meade's expense report included expenses associated with a three-person business meal for $480 with two individuals identified as advisors in airport security.

## FIRST COUNTER-CLAIM

### (Embezzlement)

59.     Leidos realleges and incorporates by reference the allegations set forth in paragraphs 1 through 58 of this counter-claim, as if fully set forth herein.

60.     Leidos offered Walther-Meade the position of Vice President and Division Manager because the Company trusted that Walther-Meade would manage Leidos's business operations in good faith.

61.     As Vice President and Division Manager of Leidos's S&TT Division, Leidos expected Walther-Meade to exercise good business judgment and to act prudently in the operation of the Company's business.

62.     Walther-Meade owed Leidos a duty of loyalty to act with the utmost good faith and in Leidos's best interest.  As a natural incident of his position and relationship, Walther-Meade owed Leidos a duty to be honest and truthful as to all material information he may have related to Leidos's business.

63.     Walther-Meade intentionally concealed from Leidos that he was actively acting against Leidos's interest.  Since at least 2016, Walther-Meade fraudulently converted Leidos's payment of sham invoices to pay for personal expenditures.

64.     Walther-Meade had access to and/or control over Ruiz's e-mail address identified in Leidos's invoices.  Upon information and belief, Walther-Meade used Ruiz's e-mail to communicate with Leidos, guised as Ruiz, about invoices, submissions, and payments.

65.     Since at least 2016, Walther-Meade and Ruiz shared an American Express credit card.  Ruiz also maintained a bank account that Walther-Meade could access.

66.     Ruiz deposited payments he received from Leidos into the bank account that Walther-Meade could access, which was used to make payments to their shared American Express Platinum credit card.

67.     Walther-Meade used the American Express credit card for his children's university and private school tuition and made numerous luxury purchases, including cars, Cartier watches, designer clothing, cosmetic procedures, and numerous luxury vacations with family and friends.

68.     In May 2016, Walther-Meade requested that Ruiz issue an American Express Platinum credit card to his wife.  And, in 2018, Walther-Meade requested

that Ruiz issue American Express Platinum credit cards for his three children, all of whom used the cards for luxury purchases and trips.

69.     Based on information and belief, Walther-Meade and Ruiz referred to Ruiz's fraudulent invoices submitted to Leidos as "*jales*," and their conversations involved discussions about the logistics of these "*jales*."

70.     Walther-Meade would inform Ruiz when it was time for a "*jale*."  Ruiz would then submit fraudulent invoices to Leidos for alleged services conducted on its behalf.  Leidos performed additional due diligence once it learned this information and found no evidence of any work ever performed by Ruiz.

71.     Walther-Meade embezzled at a minimum, approximately $3.2 million.

72.     Walther-Meade exhibited intent to deceive because he actively engaged in a scheme to create fraudulent service contracts with Leidos with the intention to embezzle and convert monies owed to Leidos for his personal use.

73.     During Walther-Meade's scheming and fraudulent conduct described above, Leidos believed Walther-Meade would carry on its best interest and relied on Walther-Meade's alleged business expertise to Leidos's detriment.

74.     As a direct and proximate result of Walther-Meade's intentional scheming and fraudulent conduct, Leidos has been damaged.

## SECOND COUNTER-CLAIM
### (Breach of Duty of Loyalty)

75.     Leidos realleges and incorporates by reference the allegations set forth in paragraphs 1 through 74 of this Counterclaim, as though fully set forth herein.

76.     As a former Leidos employee, Walther-Meade owed a duty of loyalty and good faith to the Company.  Walther-Meade's duties included obligations to exercise good business judgment, to act prudently in the operation of the Company's business, to act in the Company's best interest, and to put the interest of the Company before his own.

77.     Walther-Meade was charged with the responsibility to foster and grow Leidos's S&TT Division, which includes business operations in Mexico, and to procure sales with terms favorable to Leidos.

78.     Walther-Meade breached his duty of loyalty and good faith by, among other things, engaging in dishonest behavior and actions intended to deceive Leidos.

79.     Walther-Meade actively concealed his familial and personal business relationships with third-party consultants in Mexico.  His failure to disclose this information concealed his true intention to knowingly and intentionally engage in conduct that violated the Company's Standards of Business Ethics and Conduct.

80.     Specifically, in October 2021, communications revealed Walther-Meade's efforts to disadvantage Leidos.

81.     These communications revealed that Walther-Meade violated Leidos's policies and procedures by:

    a.     Directing work to a consultant whose principle was a family relative and who paid substantial debts for Walther-Meade, which was never disclosed;

    b.     Lying to Leidos about his relationship with this family relative;

    c.     Directing work to a consultant with whom Walther-Meade had an undisclosed personal business relationship, including ownership in two companies;

    d.     Lying to Leidos about this personal business relationship;

    e.     Failing to cooperate with Leidos's investigation into potential violations of Leidos's policies and procedures, including by failing to appear at prescheduled interviews; and

    f.     Embezzling approximately $3.2 million from Leidos through a sham vendor.

82.     As a result of his double dealing and misdeeds, Leidos has been damaged by Walther-Meade's breach of his duty of loyalty and good faith.

DEFENDANT LEIDOS, INC.'S
ANSWER AND COUNTERCLAIMS TO PLAINTIFF GEORGE WALTHER-MEADE'S COMPLAINT

# THIRD COUNTER-CLAIM

## (Conversion)

83.     Leidos realleges and incorporates by reference the allegations set forth in paragraphs 1 through 82 of this counter-claim, as though fully set forth herein.

84.     Leidos owned the monies in its business bank account, and it had the sole and exclusive right to determine to whom to issue monies from its business bank account.

85.     Leidos issued payments to Ruiz in response to sham invoices submitted to Leidos as part of a scheme to embezzle monies from Leidos.

86.     Leidos is informed and believes and thereon alleges that, at all times relevant herein, Walther-Meade actively participated in this scheme and knew the invoices were fraudulent when paid by Leidos.

87.     Walther-Meade substantially interfered with Leidos's property by intentionally taking Leidos's monies for his own personal use.

88.     Leidos did not consent to Walther-Meade's taking of its monies.

89.     Leidos has been directly harmed and damaged by Walther-Meade's conduct, and Leidos is entitled to a constructive trust and restitution by Walther-Meade of the monies he took from Leidos without permission.

90.     As a direct and proximate result of this conversion, Leidos suffered actual damages, plus interest as allowable by law.  The specific amount of damages will be proven at time of trial.

# FORTH COUNTER-CLAIM

## (Unjust Enrichment)

91.     Leidos realleges and incorporates by reference the allegations set forth in paragraphs 1 through 90 of this counter-claim, as though fully set forth herein.

92.     As a result of the wrongful conduct alleged herein, Walther-Meade has been and will be unjustly enriched at the expense of Leidos.

DEFENDANT LEIDOS, INC.'S
ANSWER AND COUNTERCLAIMS TO PLAINTIFF GEORGE WALTHER-MEADE'S COMPLAINT

93.   Walther-Meade received unauthorized payments from third-party consultants in Mexico that he contracted to perform work for Leidos.

94.   Walther-Meade should be required to disgorge and return to Leidos the gain he wrongfully obtained at the expense of Leidos, including, but not limited to, the monetary equivalent of all unauthorized payments, including deposits from third-party consultants in Mexico.

## FIFTH COUNTER-CLAIM
### (Intentional Misrepresentation)

95.   Leidos realleges and incorporates by reference the allegations set forth in paragraphs 1 through 94 of this counter-claim, as if fully set forth herein.

96.   Walther-Meade actively concealed his familial and personal business relationships with third-party consultants in Mexico, which violated the Company's Standards of Business Ethics and Conduct.

97.   Specifically, in October 2021, communications revealed Walther-Meade's efforts to disadvantage Leidos.

98.   These communications revealed that Walther-Meade violated Leidos's policies and procedures by:

   a.   Directing work to a consultant whose principle was a family relative and who paid substantial debts for Walther-Meade, which was never disclosed;

   b.   Lying to Leidos about his relationship with this family relative;

   c.   Directing work to a consultant with whom Walther-Meade had an undisclosed personal business relationship, including ownership in two companies;

   d.   Lying to Leidos about this personal business relationship;

   e.   Failing to cooperate with Leidos's investigation into potential violations of Leidos's policies and procedures, including by failing to appear at prescheduled interviews; and

1      f.      Embezzling approximately $3.2 million from Leidos through a

2  sham vendor he established through an acquaintance.

3      99.     Walther-Meade intended that Leidos rely on the representations when

4  he made them to Leidos.

5      100.    Leidos reasonably relied on Walther-Meade's representations by

6  proceeding with the contracts and other business deals as well as payment of sham

7  invoices.

8      101.    Because of Leidos's reliance on Walther-Meade's misrepresentations,

9  Leidos has suffered damages.

10     102.    Leidos's reliance on Walther-Meade's representations was a substantial

11  factor in causing its harm.

## PRAYER FOR RELIEF

13     WHEREFORE, Leidos prays for judgment as follows:

14     1.      For an award of compensatory, general and special damages in amount

15  according to proof;

16     2.      For a constructive trust and restitution as appropriate, including

17  disgorgement of profits unlawfully obtained by Walther-Meade, and based on

18  Walther-Meade's unjust enrichment;

19     3.      For a constructive trust and restitution as appropriate, including

20  disgorgement of profits unlawfully obtained by Walther-Meade, and based on

21  Walther-Meade's unjust enrichment.

22     4.      For preliminary and permanent orders requiring Walther-Meade to

23  account for and return to Leidos any and all of Leidos's property, including all

24  property that used to belong to Leidos.

25     5.      For statutory damages as appropriate;

26     6.      For an order requiring the inspection of Walther-Meade's accounts by

27  an account expert to ensure that Leidos's property is tracked is said account.

28     7.      For costs of suit;

DEFENDANT LEIDOS, INC.'S
ANSWER AND COUNTERCLAIMS TO PLAINTIFF GEORGE WALTHER-MEADE'S COMPLAINT

1      8.      For reasonable attorney's fees;

2      9.      For prejudgment and post-judgment interest; and

3     10.      For such other and further relief as the court deems proper.

4

5 DATED:  November 21, 2022          OGLETREE, DEAKINS, NASH,
                                          SMOAK & STEWART, P.C.

6

7

8                                      By: /s/ Hardy Ray Murphy_____

9                                           Hardy Ray Murphy
                                          Ryan T. Chuman

10                                    Attorneys for Defendant/Cross-
                                     Complainant

11                                    LEIDOS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT LEIDOS, INC.'S
ANSWER AND COUNTERCLAIMS TO PLAINTIFF GEORGE WALTHER-MEADE'S COMPLAINT